UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MECHANICAL MARKETING, INC., <br><br> Plaintiff, <br><br> v. <br><br> SIXXON PRECISION MACHINERY CO., ITD., TAIWAN, <br><br> Defendant. | Case No.: 5:11-CV-01844 EJD <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF** <br><br> [Re: Docket Item No. 108, 130, 142, 153] |

Plaintiff Mechanical Marketing, Inc. ("Plaintiff" or "MMI") has brought the above captioned lawsuit against Defendant Sixxon Precision Machinery Co., Ltd., Taiwan ("Defendant" or "Sixxon"). Plaintiff MMI has alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and fraud.

Presently before the Court is Defendant Sixxon's Motion for Summary Judgment on each of MMI's claims asserted in the First Amended Complaint ("FAC"). See Docket Item No. 108. Also presently before the Court are two Motions to Strike filed by Sixxon (see Docket Item Nos. 130, 153) as well as Sixxon's Motion for Administrative Relief concerning MMI's expert witness

1

disclosures (see Docket Item No. 142). The Court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).

Having fully reviewed the parties' papers, the Court will GRANT Defendant Sixxon's Motion for Summary Judgment and will thus DENY AS MOOT the remaining motions.

## I.      Background

### A. Factual Background

Plaintiff MMI is a California corporation formed by Arnold and Carol Dolgins for the purpose of operating as a sales representative for the sale of goods and services to original equipment manufacturers throughout the United States, Europe, Asia, and Mexico. FAC ¶ 1; Decl. of Arnold Dolgins ISO of Pl.'s Opp'n to Summ. J. Defendant Sixxon, an entity formed in Taiwan, is a manufacturer of high precision machining components and parts. See FAC ¶ 1; Def.'s Mot. for Summ. J. ("Def.'s MSJ"), at 1.

On or around 1998, MMI began representing Sixxon as an independent wholesale sales representative in California as well as other places in the United States. FAC ¶ 6. This representation was governed by a written agreement signed by the parties in late-April, early-May 1998. See Letter of Agreement, Dolgins Decl. Ex. A (the "1998 Agreement"). The 1998 Agreement provided that MMI would be the exclusive sales agent and would receive a 5% commission for sales it generated for Sixxon. Id.

In 2005, the 1998 Agreement was orally amended by the parties so as to reduce the sales commission to 2% and to provide that MMI would be paid a monthly stipend of $18,000. FAC ¶ 8; Def.'s MSJ, at 3. The parties disagree about an additional alleged amendment to the 1998 Agreement. MMI contends the contract was orally amended to provide that MMI would be entitled to commissions on sales made by any company within what MMI refers to as the "Sixxon Global Group." Pl.'s Opp'n, at 2, 15. MMI asserts that the Sixxon Global Group is a collective of companies consisting of Defendant Sixxon as well as other entities known as Global PMX, Global

2
Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

Thaixon, and Global Tech. Id. Defendant Sixxon, on the other hand, disagrees and argues that all other terms of the 1998 Agreement—aside from the change in commission rate and stipend—remained the same as a result of the 2005 amendment. Def.'s MSJ, at 3.

### B. Summary of Plaintiff MMI's Allegations in the FAC

In the FAC, MMI asserts three causes of action: breach of contract, breach of the covenant of good faith and fair dealing, and fraud. In support of its claims for breach of contract and breach of the covenant of good faith and fair dealing, MMI alleges that beginning in 2005, Sixxon began contacting the same customers MMI had contacted in order to generate sales for Sixxon. FAC ¶ 10. MMI alleges that Sixxon approached these customers and told them they were not to deal with MMI but instead should deal with Sixxon directly. Id. ¶¶ 10–11. MMI asserts that Sixxon breached the 1998 Agreement (and as amended) by failing to pay commissions on sales made since January 1, 2005 as well as by interfering with MMI's ability to make sales. Id. ¶¶ 12, 16. MMI argues that it has not been paid commissions on several sales made by Defendant Sixxon as well as other companies it asserts are within the Sixxon Global Group. Pl.'s Opp'n, at 2, 15. In support of its claim for fraud, MMI contends that Sixxon represented to MMI that it was not interested in dealing with certain customers despite the fact that Sixxon had been making sales directly to those same customers during a period from January 1, 2005 to October 31, 2010. FAC ¶¶ 19–21.

## II. Motion for Summary Judgment Legal Standard

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

3
Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

If the moving party meets this initial burden, the burden then shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Barlow v. Ground, 943 F.2d 1132, 1134–36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. Discussion

#### A. Breach of Contract Claim

Under California law, a claim for breach of contract requires "(1) existence of the contract; (2) plaintiff's performance or excuse of nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).

### 1. The Contract and Its Terms

The Court first notes that the parties do not dispute the existence the 1998 Agreement as amended in 2005. What is in dispute and at issue are the terms of the contract. As noted, Defendant Sixxon contends that under the agreement MMI is entitled to commissions only on sales made by Defendant Sixxon—the party to this lawsuit. On the other hand, Plaintiff MMI contends that as a result of the 2005 oral amendment to the 1998 Agreement, MMI is entitled a commission on any sale to a MMI customer if the sale was made by any company within the "Sixxon Global Group." Defendant Sixxon avers that Global PMX, Global Thaixon, and Global Tech are separate legal entities apart from Defendant Sixxon with their own sales representatives and engineering teams in Europe and the United States. Regardless, Sixxon argues, those entities were not part of any agreement between MMI and Sixxon.

The Court agrees with Sixxon on this issue and finds that the contract between the parties only involves sales by Defendant Sixxon. Under California contract law, "if the language [of a contract] is clear and explicit, and does not involve an absurdity," the language must govern the contract's interpretation. Cal. Civ. Code § 1638. Moreover, when a contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible." Id. § 1639. Plaintiff MMI asks the Court to interpret the 1998 Agreement so as to provide that MMI is to receive commission on sales made by any of the entities it asserts are within the Sixxon Global Group. This interpretation runs contrary to the express language of the 1998 Agreement which makes no mention of the Sixxon Global Group let alone the entities—Global PMX, Global Thaixon, and Global Tech—MMI proffers to be part of that group. Ultimately, nowhere in the 1998 Agreement does it state that MMI would be entitled to a commission from sales made by an entity other than Defendant Sixxon.

MMI argues that its position is not with regard to the written 1998 Agreement but rather with regard to the oral amendment to that agreement that occurred in 2005. MMI contends that in an in-person meeting, Sixxon president and CEO Billy Lin agreed to pay MMI for all sales made

5

Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

by any company within the Sixxon Global Group. Pl.'s Opp'n, at 2, 15. However, MMI points to no direct evidence supporting this unsubstantiated assertion. MMI does offer evidence that it contends supports the notion that Defendant Sixxon, Global PMX, Global Thaixon, and Global Tech operated as a "group." However, this argument is inapposite in light of the fact that the 1998 Agreement makes no mention of the other members of the alleged "group" and that MMI cannot substantiate its claim about the 2005 amendment. Even if Defendant Sixxon were part such a group, MMI has not produced evidence to show that it is entitled to commission on sales made by the group sufficient to withstand Sixxon's motion for summary judgment.

The Court also notes that, contrary to MMI's argument, the course of dealing between Defendant Sixxon and MMI stands as no indication that the parties intended for the 1998 Agreement or the subsequent amendment to provide that MMI would be entitled to commission made by entities other than Defendant Sixxon. In some instances, the course of dealing and course of performance may be used to explicate or supplement the terms of an agreement. See Cal. Comm. Code § 2202; Sonic Mfg. Technologies, Inc. v. AAE Sys., Inc., 196 Cal. App. 4th 456, 464 (2011). In this case, however, the evidence on the record only indicates that the course of dealing between the parties was that Sixxon would pay a commission to MMI for sales made by Sixxon only, and not for sales made by any other entity. See, e.g. Decl. of John Van Loben ISO Def.'s MSJ Ex. D (Arnold Dolgins 3/29/12 deposition, 241:6–13; 331:15–25). MMI never made sales for Global PMX or Global Thaixon, and it was never paid for sales made by those companies. Id.; id. Ex. C (Carol Dolgins 3/30/12 deposition, 157:20–158:11; 234:8–11). MMI's commission was always paid by Sixxon Taiwan. Id. Ex. D (Arnold Dolgins 3/29/12 deposition, 241:6–13).

For these reasons, the Court finds that the 1998 Agreement as amended in 2005 provides that MMI is entitled to commission only for sales made by Defendant Sixxon Precision Machinery Co., Ltd. (Defendant Sixxon) and not for any other entity. As such, MMI can only recover on its breach of contract claim for sales that involved Defendant Sixxon.

6
Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

### 2. Defendant Sixxon's Alleged Breach

MMI contends that Sixxon breached the agreement by failing to pay commissions on several sales. In support of this claim, MMI points only to two discrete sales for which it contends it has not been paid commission. See Pl.'s Opp'n. First, MMI claims that it is entitled to approximately $195,000 in commission on sales to an entity known as Sensata for products manufactured by Global PMX. See id. at 15. Second, MMI claims that it is owed approximately $19,000 in commissions on sales to a company called Flow International ("Flow"). Id.

The Court rejects MMI's arguments and grants Sixxon's motion for summary judgment on the breach of contract claim. First, with regard to the alleged sales to Sensata, the Court refers to its determination that the 1998 Agreement as amended in 2005 only covers sales made by Defendant Sixxon. MMI's claim about sales to Sensata relates to products made and sold by the entity known as Global PMX; as such, this sale falls outside the agreement. Second, the Court agrees with Defendant that MMI has not provided sufficient evidence to support the claim about commission on sales made to Flow. Even after the period of discovery, MMI has not produced concrete evidence—other than the unsubstantiated assertions by MMI and its agents—showing that it has not been paid a commission on a sale to Flow. In fact, Sixxon has provided evidence suggesting that it continued to pay MMI commission on sales to Flow through 2010. Van Loben Decl. Ex. J (Sixxon's monthly shipping report and commission calculation on sales made to Flow). MMI has not attempted to rebut this evidence.

The Court also notes that while MMI alleges in the FAC a breach of contract with regard to sales made to several companies in addition to Sensata and Flow, it does not expound on these assertions in its Opposition to Defendant's Motion for Summary Judgment. In any event, the Court agrees with Sixxon that MMI has failed to provide sufficient evidence that shows a breach with regard to these other sales. See Def.'s MSJ, at 4.

7
Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

For the foregoing reasons, the Court finds that MMI has not substantiated its claim for breach of contract with evidence sufficient to withstand Sixxon's Motion for Summary Judgment. As such, summary judgment on MMI's breach of contract claim is GRANTED in Sixxon's favor.

**B. Breach of the Covenant of Good Faith and Fair Dealing**

To allege a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege the following elements: (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff. See Judicial Counsel of California Civil Jury Instructions § 325 (2011); see also Oculus Innovative Sciences, Inc. v. Nofil Corp., No. C 06–01686 SI, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007). A plaintiff must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities." Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990).

Plaintiff MMI contends that Sixxon breached the covenant of good faith and fair dealing by diverting business MMI allegedly procured for Sixxon to one of the other entities which allegedly make up Sixxon Global Group. MMI asserts that Sixxon's CEO steered sales procured by MMI to the other Sixxon Global Group entities. However, MMI provides no concrete evidence demonstrating such diversions. What MMI does provide is the circumstantial suggestion that Sixxon is linked to Global PMX, Global Thaixon, and Global Tech. Even if this were true, MMI has produced no evidence demonstrating that Sixxon was diverting MMI's sales to these other entities.

MMI also appears to contend that Sixxon breached the covenant by communicating with MMI's customers directly. The Court rejects this argument for two reasons. First, MMI fails to

8
Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

show how this direct communication interfered with MMI's ability to perform under the contract or harmed MMI generally. Sixxon has provided evidence that these direct communications with customers related to technical and inventory issues that MMI would not be apt at resolving. See Def.'s MSJ, at 16–17. Moreover, MMI continued to receive commissions on sales from these customers even after Sixxon's direct communications. Id. Again, MMI has not attempted to rebut these contentions. Second, the agreement between the parties did not enjoin Sixxon from directly communicating with customers or require that Sixxon inform MMI of these direct communications. Imposing such a duty onto Sixxon goes beyond the purpose of the implied covenant of good faith and fair dealing, which is to insure compliance with the express terms and obligations of the express agreement. See Smith v. City and County of San Francisco, 225 Cal. App. 3d 38, 49 (1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."); Pasadena Live v. City of Pasadena, 114 Cal. App. 4th 1089, 1094 (2004) ("The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.").

For these reasons, the Court finds that MMI has not substantiated its claim for breach of the covenant of good faith and fair dealing with evidence sufficient to withstand Sixxon's motion. As such, summary judgment on this claim is GRANTED in Sixxon's favor.

### C. Fraud

In order to sufficiently plead a claim for fraud, a plaintiff must show: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance (4) justifiable reliance; and (5) resulting damage. Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974 (1997). MMI alleges that Sixxon intentionally gave MMI false information about customers and potential customers so as to avoid paying a commission fee to MMI. FAC ¶¶ 19, 21.

Sixxon moves for summary judgment on the fraud claim on the grounds that MMI has not substantiated this claim with any precise, concrete, or specific evidence. The Court agrees. The FAC alleges the following with regard to the fraud claim:

> From time to time . . . Defendants told Plaintiff that they were not interested in doing business with a particular company, or that they could not quote an acceptable price to the customer where Defendants could still make a profit, or after quoting a price, told Plaintiff that the customer never placed an order. Defendants made other representations to the effect that Defendants were not doing business with specific customers.
> . . .
> Plaintiff information . . . that Defendants, either directly or through one of its affiliate companies, were in fact selling parts and materials to these customers and not paying Plaintiff a commission.

FAC ¶¶ 19–20. This allegation is broad and generalized and is one that would likely not have met the Rule 9 pleading standards of specificity and particularity for claims of fraud or misrepresentation had Sixxon moved to dismiss that claim. See Fed. R. Civ. P. 9(b). MMI's Opposition to Sixxon's Motion for Summary Judgment fails to point to concrete evidence showing specific false or misleading statements that were intentionally made by Sixxon or its agents so as to defraud MMI out of commissions. The Opposition makes a reference to an allegation that MMI was "led to believe that Sixxon and the remaining companies in the Sixxon Global Group never did business with Sensata" and that Sixxon "concealed from Plaintiff . . . that Global PMX . . . was selling parts to Plaintiff's customer." Pl.'s Opp'n, at 16. However, there is no evidence in the record confirming these allegations or showing that Sixxon intentionally presented MMI with false information so as to avoid paying the commission fees. In fact, the evidence gathered during discovery confirms Sixxon's contention that statements Sixxon made to MMI about declining volumes of sales to certain customers was in fact accurate. See Def.'s MSJ, at 20–21.

Because MMI has provided no concrete evidence supporting its fraud allegations, summary judgment on MMI's fraud claim is GRANTED in Sixxon's favor.

10
Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF

1  **IV.     Conclusion and Order**

2  For the foregoing reasons, Defendant Sixxon's Motion for Summary Judgment (Docket

3  Item No. 108) is GRANTED in its entirety. As such, Defendant Sixxon's Motions to Strike

4  (Docket Item Nos. 130, 153) are DENIED AS MOOT, and Defendant Sixxon's Motion for

5  Administrative Relief (Docket Item No. 142) is DENIED AS MOOT.

6  Since this Order effectively disposes of the entire case, the Clerk shall close this file upon

7  entry of Judgment.

9  **IT IS SO ORDERED.**

10  Dated: May 15, 2013



EDWARD J. DAVILA
United States District Judge

Case No.: 5:11-CV-01844 EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTIONS TO STRIKE; DENYING DEFENDANT'S MOTION FOR
ADMINISTRATIVE RELIEF